**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-12-01419--DGC |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Michael Rocky Lane, et al., | |
| Defendants. | |

This order addresses the following motions: (1) the government's motion in limine to preclude certain defenses (Doc. 106), (2) Defendant Strunk's motion to dismiss the indictment because it fails to allege criminal acts (Doc. 301), (3) Defendant Freeman's motion to dismiss because the law is vague as applied (Doc. 303), and (4) the motion to dismiss claims against Defendants Strunk, Freeman, and Lane based on entrapment by estoppel (Doc. 323). The motions are briefed, and the Court discussed them with the parties on June 21, 2013. For the reasons stated below, the Court will grant the motion in limine and deny the motions to dismiss.

**I.    Background.**

On March 28, 2013, the government obtained a Second Superseding Indictment ("the Indictment") charging seven co-defendants, including the three remaining Defendants – Michael Rocky Lane, Clinton Joseph Strunk, and Andrew Scott Freeman – with violations of the federal comprehensive Drug Abuse Prevention and Control Act of 1970 ("CSA") and the federal Controlled Substance Analogue Enforcement Act of 1986 ("Analogue Act"). Doc. 143.

The CSA prohibits the manufacture, distribution and possession of controlled substances, which are drugs or other substances listed in Schedules I and II of the Act. *Id.*, at 2, ¶ 1; *see* 21 U.S.C. § 841. The Analogue Act prohibits the manufacture, distribution, and possession of controlled substance analogues. Doc. 143, at 2, ¶ 3; 21 U.S.C. § 813. These are substances that have a substantially similar chemical structure to a Schedule I or Schedule II controlled substance and that have or are represented or intended to have a substantially similar effect on the central nervous system. *Id.*, *see* 21 U.S.C. § 802(32)(A). To the extent that a controlled substance analogue is intended for human consumption, it is treated as a Schedule I controlled substance for purposes of the CSA. *Id.*, *see* 21 U.S.C. § 813.

The charges in the Indictment stem from allegations that Defendants manufactured and distributed, under false and misleading labels, products such as "Eight Ballz Bath Salts" and "Eight Ballz Premium Glass Cleaner." Doc. 143 at 3-5, *passim*. The Indictment alleges that these products contained various controlled substance analogues, were sold as powder-like substances in gram and half-gram quantities, and, despite their labels, were actually intended for human consumption. *Id.* The Indictment alleges that prior to October 2011, Defendants used 3,4-methylenedioxypyrovalerone (MDPV) in "Eight Ballz Bath Salts" in violation of the Analogue Act, and that upon learning that the Drug Enforcement Administration ("DEA") had issued an emergency rule listing MDPV as a controlled substance, Defendants began importing and using replacement controlled substance analogues commonly known as a-PVP, a-PBP, pentylone, and pentadone in "Eight Ballz Bath Salts" and other products. *Id.*

**II.    Government's Motion to Preclude Certain Defenses.**

The CSA provides that "it shall be unlawful for any person knowingly or intentionally – (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]" 21 U.S.C. § 841(a)(1). The Analogue Act provides that "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a

controlled substance in schedule I [of the CSA]." 21 U.S.C. § 813. The Analogue Act defines a "controlled substance analogue" as "a substance –

> **(i)** the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> **(ii)** which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
>
> **(iii)** with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

21 U.S.C. § 802(32)(A). The parties agree, as confirmed at the hearing on June 21, 2013, that this provision should be read in the conjunctive – to show that a drug is a controlled substance analogue, the government must satisfy elements (i) and (ii) or elements (i) and (iii). The Court agrees. *See United States v. Turcotte*, 405 F.3d 515, 522 (7th Cir. 2005) ("the vast majority of federal courts to confront this issue have adopted the conjunctive reading").

 The government argues that intent to violate the law is not a requirement of the CSA or the Analogue Act and that Defendants therefore should be precluded from arguing to the jury that they did not know their actions were illegal or that they relied on the advice of counsel. Doc. 106. Defendants have responded that they do not intend to assert that they relied on the advice of counsel, but that they should be permitted to show the jury that they thought their actions were entirely legal. Resolution of this motion requires the Court to decide what the government must prove to convict Defendants of violating the CSA through the sale or distribution of analogue drugs. The parties have cited, and the Court has found, no Ninth Circuit precedent on this question.

 Some federal courts have suggested that the government must prove only that the drugs in question were analogues within the statutory definition set forth above, and that

a defendant intended them for human consumption. *See, e.g., United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003). The Court finds this suggestion problematic because of its potential to criminalize innocent conduct and because the CSA requires a knowing and intentional violation. *See* 21 U.S.C. § 841(a).

Other courts have held that the government must show a defendant knew he possessed a controlled substance. *See, e.g., United States v. Roberts*, 363 F.3d 118, 123 n. 1 (2nd Cir. 2004). The Court has difficulty with this approach because analogue drugs are not controlled substances. They instead are "treated" as controlled substances under the Analogue Act. 21 U.S.C. § 813.

Still other Courts hold that the government must prove a defendant knew he possessed a controlled substance analogue. *See, e.g., Turcotte*, 405 F.3d at 527; *United States v. Sullivan*, 714 F.3d 1104, 1107 (8th Cir. 2013). The Court finds these cases most persuasive, particularly the Seventh Circuit's thoughtful analysis in *Turcotte*.

As noted above, the CSA requires a knowing and intentional act. *See* 21 U.S.C. § 841(a). Although this normally requires the government to prove that a defendant knew he possessed a controlled substance, analogue drugs, as noted above, are not controlled substances. The Court concludes that the most reasonable reading of the CSA and the Analogue Act requires the government to prove that a defendant knew he possessed a controlled substance analogue. Such a reading applies the express knowledge and intent requirements of the CSA, while taking into account the statutory requirements of the Analogue Act. The Court accordingly will apply the following Seventh Circuit approach in this case:

> In light of all these considerations, we feel that our precedents demand a showing that the defendant knew the substance in question was a controlled substance analogue. That is, the defendant must know that the substance at issue meets the definition of a controlled substance analogue set forth in § 802(32)(A): A defendant must know that the substance at issue has a chemical structure substantially similar to that of a controlled substance, and he or she must either know that it has similar physiological effects or intend or represent that it has such effects. We recognize that

- 4 -

>requiring the government to prove scienter as to these criteria may impose a significant prosecutorial burden in some cases. The question of similar chemical structure is particularly nettlesome since, even if such chemical similarities exist, and even if the defendant is aware of these similarities, the intricacies of chemical science may render it extremely difficult to prove that a defendant had such knowledge. As a provisional remedy for this problem, we prescribe that, in such cases, if the scienter requirement is met with regard to the second part of the analogue definition (knowledge or representation of similar physiological effects), the jury is permitted – but not required – to infer that the defendant also had knowledge of the relevant chemical similarities.

*Turcotte*, 405 F.3d at 527. The Court will work with the parties to fashion jury instructions that reflect this approach.

Proof that Defendants knew the drugs at issue in this case were controlled substance analogues does not require the government to prove that Defendants knew their conduct was illegal. Federal drug crimes generally do not require proof that a defendant knew his or her conduct violated the law. *See United States v. Ansaldi*, 372 F.3d 118, 128 (2nd Cir. 2004) ("For the most part, the prosecution need not show that a defendant knew the illegality of the conduct with which he is charged. . . . Knowledge of, or intent to violate, the law is simply not an element of [a controlled substance analogue] offense."); *United States v, Rosenthal*, 334 Fed. Appx. 841, 842-43 (9th Cir. 2009) (unpublished) (CSA § 841(a)(1) does not "require knowledge of the law or intent to violate the law to sustain a conviction."); *United States v. Stacy*, 734 F.Supp.2d 1074, 1083-84 (S.D. Cal. 2010) (same).

As a result, Defendants will not be permitted to present evidence or argument to the jury that they believed their conduct was legal. Such evidence and argument are irrelevant. *Rosenthal*, 334 Fed. Appx. at 843 ("The evidence of Rosenthal's belief in the legality of his actions is therefore irrelevant, and the district court properly excluded it."); *Stacy*, 734 F.Supp.2d at 1084 ("Defendant's belief that he was acting lawfully is irrelevant as to criminal liability").

The Court will grant the government's motion in limine with respect to any

evidence or argument that Defendants believed their conduct to be legal, or any advice-of-counsel defense.  In light of the government's proof requirements as set forth above, however, Defendants may present evidence and argument that they did not know the substances at issue in this case had chemical structures substantially similar to that of a controlled substance or that the substances had substantially similar physiological effects.  Defendants may also present evidence that they did not intend or represent that the substances had such effects.

**III.    Motion to Dismiss Indictment for Failure to Allege Criminal Acts.**

Defendant Strunk argues that the Indictment alleging criminal acts under the CSA should be dismissed because § 841(a)(1) prohibits the manufacture or distribution of "a controlled substance" and not "a controlled substance analogue" as alleged in the Indictment.  Doc. 301.  Additionally, § 802(32), which defines "controlled substance analogue," states that "[s]uch term does not include – (i) a controlled substance."  21 U.S.C. § 802(32)(C).  Defendant argues that even though § 813 states that "[a] controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I," a normal person would understand from § 802(32)(C) that a "controlled substance analogue" is never a "controlled substance" and thus § 841(a)(1) cannot prohibit the manufacture or distribution of "a controlled substance analogue" when it refers only to "a controlled substance."  Doc. 301 at 3.  Defendant Strunk argues that this conflict in the statutory scheme renders it unenforceable.  *Id.* at 4-11.

The government responds that § 802(32)(C)(i), which says that a controlled substance analogue is not a controlled substance, provides a necessary distinction for purposes of understanding what is considered an analogue under that section, but that under § 813 "a controlled substance analogue," when it is produced or marketed for human consumption, expressly is treated as "a controlled substance in schedule I" for purposes of prosecution under § 841(a)(1).  The Court agrees.  There is no conflict in the statutory scheme as a result of a term being defined as not including another term in one

section, but being treated the same as that term for purposes of enforcement under certain defined circumstances in another section.  Defendant Strunk cites a number of cases for the proposition that conflicting statutes are unenforceable (Doc. 301 at 4-11), but the Court finds that there is no conflict here, and none of these cases apply.

**IV.    Motion to Dismiss for Vagueness.**

Defendant Freeman has filed a motion to dismiss the Indictment on behalf of himself and the remaining Defendants on the grounds that the definition of a controlled substance analogue is unconstitutionally vague as applied to the substances charged in this case.  Doc. 303.  "A statute is void for vagueness when it does not sufficiently identify the conduct that is prohibited."  *United States v. Wunsch,* 84 F.3d 1110, 1119 (9th Cir.1995).  A vague statute violates due process because "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Const. Co.,* 269 U.S. 385, 391, (1926).  Thus, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.  *Kolender v. Lawson,* 461 U.S. 352, 357 (1983).

Defendants argue that the Analogue Act does not give proper notice that it applies in this case because the legislative history of the Act shows that Congress's intent was to proscribe new "designer drugs" developed by those trying to circumvent prosecution by making slight alterations to listed drugs, and the substances charged in the Indictment are not new.  Defendants argues that the drugs at issue in this case have been in existence for years, were created (and in some cases patented) by mainstream researchers for medical purposes, and predate the listing of the drugs of which they are said to be analogues.  *Id.* at 2, 8-19.

Defendants cite statements made by Senators that the Analogue Act would "prevent underground chemists from producing dangerous designer drugs by **slightly changing the chemical composition of existing illegal drugs**," and that the Act "**closes**

1    **the loophole in present law that allows the creation** and distribution of deadly new
2    drugs without violating federal law." Doc. 304 at 9 (quoting 131 Cong. Rec. 19114
3    (1985) (Statement of Sen. Thurmond); 131 Cong. Rec. 27311 (1985) (Statement of Sen.
4    D'Amato)) (emphases added by Defendants). Defendants cite to similar statements made
5    by federal judges and the DEA as showing that the Act applies only to drugs produced by
6    underground chemists who tinker with the molecules of existing controlled substances.
7    *Id.* at 10-13. *See, e.g.*, *United States v. Granberry*, 916 F.2d 1008 (5th Cir. 1990) (stating
8    that the Act applies to "drugs which have been chemically designed to be similar to
9    controlled substances, but which are not themselves listed on the controlled substance
10   schedules"); *United States v. Hodge*, 321 F.3d 429, 432 (3d Cir. 2003) ("The object of the
11   Analogue Act is to prevent underground chemists from producing slightly modified drugs
12   that are legal but have the same effects and dangers as scheduled controlled
13   substances."); DEA News Release, July 22, 2004 "DEA Announces Arrests of Website
14   Operators Selling Illegal Designer Drugs" http://www.justice.gov/dea/pubs/pressrel/
15   pr072204p.html ("Prior to the [Analogue Act], chemists would cause slight changes in
16   the molecular structure of a controlled substance to circumvent the CSA. The [Analogue
17   Act] was enacted to arm law enforcement with the tools needed to stay one step ahead of
18   the drug dealers' innovations.").
19           The Court is not persuaded that these and similar citations support Defendants'
20   cramped reading of the Analogue Act. The Act itself defines controlled substance
21   analogues as substances that have a substantially similar chemical composition to a
22   controlled substance and that have or are represented or intended to have a substantially
23   similar stimulant, depressant, or hallucinogenic effect. 21 U.S.C. § 802(32)(A). Nothing
24   in the plain language of the Act suggests that these criteria apply only to new substances
25   developed by altering the chemical composition of a known listed substance. The fact
26   that Congress and the DEA envisioned the Act as a way to target such recognized
27   methods of circumventing existing prohibitions does not mean that its reach is limited to
28   only those circumstances or that ordinary people would not understand the plain language

of the Analogue Act – that substances marketed for human consumption whose chemical structure and effects are substantially similar to those of a listed substance are within the ambit of its prohibitions. As the Eighth Circuit has stated, "[o]ne of Congress' purposes for passing the Analogue Statute was to prohibit innovative drugs that are not yet listed as controlled substances. . . . However, Congress did not limit the Analogue Statute's application to newly designed drugs. The language of the statute shows that Congress intended to proscribe all drugs that are similar in chemical structure and effect to illegal drugs." *United States v. Washam*, 312 F.3d 926, 933 (8th Cir. 2003) (internal citation omitted); *see also Roberts*, 363 F.3d at 126 ("[I]t is true that Congress seems to have been first prompted to address the issue of controlled substance analogues by the perceived problem of designer drugs. But the wording of the Act evinces a clear congressional intent not to limit its scope to such substances.").[1]

Defendants' citation to *United States v. Forbes*, 806 F.Supp. 232 (D. Colo. 1992), does not compel a different conclusion. *Forbes* found the Analogue Act vague as applied to alphaethyltryptamine ("AET"), an antidepressant that was sold for many years by the Upjohn Chemical Company before being taken off the market due to its toxic side effects, but remained available for purchase from two chemical manufacturers and was allegedly purchased and delivered to the defendants through the U.S. mail. *Id*. at 233. This ruling was based on a combination of factors, only some of which apply in this case. The court specifically stated that "although the 'substantially similar' language may generally be susceptible to adequate definition, it runs afoul of the vagueness doctrine when it is applied to AET under the circumstances in this case." *Id.* at 237. Those circumstances included that there was no consensus in the scientific community and disagreement even among the government's own scientists that AET had a "substantially similar" chemical structure to the two alleged controlled substances, AET was freely

---

[1] *Washam* and *Roberts* upheld convictions under the Analogue Act for the manufacture and sale of substances for human consumption containing 1,4 butanediol, a pre-existing industrial solvent that was found to induce sleep and that could be utilized as a "date rape" drug.

available for purchase through the U.S. mail, it had not been scheduled as a controlled substance in the 30 years of its existence, and the U.S. Attorney's Office had previously declined to prosecute the same defendants for distributing AET on the basis of its own chemist's conclusions that AET was not substantially similar to listed substances. *Id.* at 237-39. The court concluded that the government's choice to prosecute the defendants where it had previously declined to do so and where it had not chosen to prosecute the chemical companies that manufactured and sold AET could only be viewed as arbitrary, making the Act unconstitutionally vague as applied. *Id.* at 239.

Defendants note that, like *Forbes*, the *Daubert* hearing in this case revealed a lack of scientific consensus that the substances charged in the Indictment have a substantially similar chemical structure to listed substances. Doc. 304 at 15. They also note that many of these substances have been in existence for decades and have not been listed as controlled substances. *Id.* at 2, 10. These factors, taken alone, do not show that the Analogue Act is unconstitutionally vague as applied in this case. Courts dealing with vagueness challenges to the Analogue Act have found that the statute is necessarily "somewhat elastic" to capture within its scope drugs that have not yet been listed, but that disagreement among experts regarding similarities in chemical structure does not make it unconstitutionally vague. *United States v. McKinney*, 79 F.3d 105, 108 (8th Cir. 1996); *see also Washam*, 312 F.3d at 932 (citing *McKinney* for the proposition that "experts need not agree for there to be a finding that a chemical is an analogue"). As stated in *United States v. Fedida*, No. 6:12-cr-209-Orl-37DAB, 2013 WL 1831991, at *10 n. 6 (M.D. Fl. May 1, 2013), "[t]he differing opinions of experts on the issue of substantial similarity does not . . . render the Analogue Act vague. Rather, such testimony should be presented to the trier of fact, who will decide the relative strengths and merits of the methodologies supporting the experts' opinions." Additionally, even though the district court in *Forbes* stated that its conclusion with respect to AET was buttressed by the fact that Congress intended the Act "to attack underground chemists who tinker with controlled substances to create new drugs that are not yet illegal," and the defendants in

that case had not engaged in such conduct, this also is not a reason to conclude that the statute is vague every time it is applied to unlisted substances that have been in existence for years. As noted above, neither the language of the Analogue Act nor circuit court opinions that have addressed its application to pre-existing substances support such a limited interpretation.

The additional factors that made the Analogue Act unconstitutionally vague in *Forbes*, including purchase through the U.S. mail and the government's inconsistent prosecutorial stances with respect to the distributors of AET and with respect to the same defendants on an earlier occasion, are not present here. Defendants' reliance on *Forbes*, which the government notes is the only case to ever find the Analogue Act void for vagueness under any circumstance, is misplaced. *See* Doc. 336 at 10.

Defendants also argue that the Analogue Act is unconstitutionally vague because it does not define the terms "chemical structure," "substantially similar," or "human consumption," leaving ordinary people to guess at whether the Act applies in a particular case. *Id.* at 19-24. Defendants note that there is no dictionary definition of "substantially similar," and the experts in this case could not cite any scientific definitions of "chemical structure." Doc. 304 at 19-20. Courts have found, however, that the relevant inquiry for purposes of the Analogue Act is how an ordinary person would interpret these terms, not how they might be technically defined. The Eighth Circuit found in *McKinney* that a reasonable layperson could decide by comparing the chemical diagrams of two substances whether their structures were substantially similar for purposes of the Analogue Act. 79 F.3d at 108. The Fourth Circuit followed *McKinney*'s reasoning in *Klecker*, 348 F.3d at 72, which found that, notwithstanding other important differences pointed out by the experts, the structural similarities between two substances represented by chemical diagrams were sufficient "to put a reasonable person on notice that Foxy might be regarded as a DET analogue." As the Fifth Circuit concluded in *Granberry*, 916 F.2d at 1010, the definition of a controlled substance analogue is stated "in terms readily comprehensible to the ordinary reader" and therefore "provides adequate notice of

what conduct is prohibited."

This analysis also holds true for the term "human consumption." Defendants argue that dictionary definitions of "consumption" vary and include eating and drinking, but not smoking, snorting, shooting, or otherwise ingesting. Doc. 304 at 21. As the government points out, however, the statutory definition of a controlled substance analogue defines these substances in relation to their similarities in chemical structure and effect to Schedule I and Schedule II controlled substances, which include such things as marijuana, cocaine, and heroin. There can be no doubt that such substances are commonly understood to be ingested in multiple ways, including by smoking, snorting, inhaling, injecting, eating, and drinking. Doc. 336 at 15. The Court agrees that an ordinary person would be put on notice that "human consumption" in the context of the Analogue Act includes all of these commonly known forms of ingesting drugs.

The government argues, and the Court agrees, that Defendants have not presented a due process issue with respect to the application of the Analogue Act as applied in this case because their own actions as alleged in the Indictment show that they had actual notice that they were selling controlled substance analogues. Doc. 336 at 15-16. These actions included selling their products under circumstances demonstrating they were intended for human consumption while falsely labeling them as "bath salts," "ultra premium glass cleaner," and "not for human consumption." *Id.*

The Court makes two final points on the vagueness issue. First, "[t]he circuit courts considering this issue have unanimously held that the CSA's Analogue Provision is not unconstitutionally vague." *Turcotte*, 405 F.3d at 531 (citing seven circuit court decisions). Second, the Court's conclusion that the government must show Defendants knew the drugs at issue in this case were controlled substance analogues does much to eliminate vagueness concerns. *Turcotte*, 405 F.3d at 531; *Roberts*, 363 F.3d at 123.

**V.   Motion to Dismiss based on Entrapment by Estoppel.**

"Entrapment by estoppel is the unintentional entrapment by an official who mistakenly misleads a person into a violation of the law." *United States v. Ramirez-*

*Valencia,* 202 F.3d 1106, 1109 (9th Cir.1999).  "It derives from the Due Process Clause of the Constitution, which prohibits convictions based on misleading actions by government officials."  *United States v. Batterjee,* 361 F.3d 1210, 1216 (9th Cir.2004) (citing *United States v. Tallmadge,* 829 F.2d 767, 773 (9th Cir.1987)).  The defense is "available only when the defendant can demonstrate a reasonable belief that his conduct was sanctioned by the government."  *See United States v. Schafer*, 625 F.3d 629, 637 (9th Cir. 2010) (quoting *United States v. Burrows*, 36 F.3d 875, 882 (9th Cir. 1994) (brackets omitted)).

To establish entrapment by estoppel, a defendant must show that (1) an authorized government official, empowered to render the claimed erroneous advice, (2) who has been made aware of all the relevant historical facts, (3) affirmatively told him the proscribed conduct was permissible, (4) that he relied on the false information, and (5) that the reliance was reasonable.  *Batterjee,* 361 F.3d at 1216 (internal quotation marks and citations omitted); *see also Schafer*, 625 F.3d at 637 (same).  A defendant must establish this defense by a preponderance of the evidence.  *United States v. Stewart*, 185 F.3d 112, 124 (3d Cir. 1999).

Defendant's motion rests on citations to statements made by Senators and judges regarding the Analogue Act.  Doc. 323 at 2-6.  The crux of Defendant's argument is that because federal government officials publicly stated that the Analogue Act prohibited the use of drugs specifically designed to avoid the ban on scheduled substances, and the drugs in this case were not designed for that purpose, he is entitled to an entrapment by estoppel defense as a matter of law.  *Id.*  Defendant has cited various statements by government officials, but he fails to address the elements of entrapment by estoppel identified above.

The cited statements fail to satisfy the second element of entrapment by estoppel – that the official providing the allegedly misleading advice had been made aware of all relevant historical facts.  There is nothing in the record to suggest that any of the quoted officials had knowledge of Defendants' actions.

Nor do the statements meet the third element – that the officials affirmatively told Defendants that their actions were permissible. Defendant argues that "there has never been a public pronouncement from the DEA or other law enforcement source indicating that the alleged analogues that are subject to the relevant indictment were anything other than legal, albeit dangerous to consume." Doc. 323 at 4. But this is at most an omission, not the affirmative statement necessary to establish entrapment by estoppel. "To succeed under [the entrapment] theory, defendant must do more than show that the government made vague or even contradictory statements." *Ramirez-Valencia*, 202 F.3d at 1109 (citing *Raley v. Ohio*, 360 U.S. 423, 438 (1959)) (internal quotation marks omitted). This is not a scenario where "state actors made affirmative, 'actively misleading' statements directly to the defendants" "that a specific, individually contemplated course of conduct was lawful." *United States v. Washington*, 887 F. Supp. 2d 1077, 1098 (D. Mont. 2012) (citing *Raley*, 360 U.S. at 438; *Cox v. Louisiana*, 379 U.S. 559, 571 (1965)). Defendant has presented only general statements by government officials regarding the Analogue Act; he has not pointed to evidence "show[ing] that the government affirmatively told him the proscribed conduct was permissible, and that he reasonably relied on the government's statement." *Ramirez-Valencia*, 202 F.3d at 1109 (citing *Raley*, 360 U.S. at 438). Additionally, "Defendant[] cite[s] no case law, and the Court finds none, in which a person justifiably relied on an official's comments to a third party. A direct, targeted statement to a discrete person or group of people appears to be required." *Washington*, 887 F. Supp. 2d at 1098 (citing *Batterjee*, 361 F.3d at 1214; *Tallmadge*, 829 F.2d at 770; *Raley*, 360 U.S. at 426-27; *Cox*, 379 U.S. at 571)).

Because the statements cited in Defendant's motion do not support dismissal based on entrapment by estoppel, the Court will deny the motion. Moreover, Defendants may not rely on these statements for such a defense at trial. *See Schafer*, 625 F.3d at 637 ("A district court may preclude evidence of a particular defense if the defendant fails to make a prima facie showing that he is eligible for the defense.").[2]

---

[2] Defendants Freeman and Strunk filed a reply brief (Doc. 353) to Defendant

**IT IS ORDERED** that the government's motion in limine to preclude certain defenses (Doc. 106) is **granted** and Defendants' motions to dismiss (301, 303, 323) are **denied**.

Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 1/30/2013.

Dated this 24th day of June, 2013.

_____
David G. Campbell
United States District Judge

---

Lane's motion. The motion states that "Defendants have, for the sake of efficiency, 'piggy backed' on each others' motions[.]" Doc. 353 at 3. In its response brief, the government argued that Defendant Lane was aware of the Analog Act and its consequences (Doc. 351 at 7-8) based on a letter to Defendant Lane (Doc. 351-1) and other email correspondence (Doc. 351-2). Defendants Freeman and Strunk now argue that there is no evidence showing that they shared Defendant Lane's knowledge about the Analog Act, and they submit that the DEA has not made statements sufficient to put them "'on notice' that their activities were 'illegal.'" Doc. 353 at 3-4. Thus, they argue that they should not be precluded from asserting the entrapment by estoppel defense at trial even if Defendant Lane's motion is denied. *Id.* at 4. But Defendants Freeman and Strunk have not made a prima facie showing that they are eligible for the defense. Accordingly, Defendants Freeman and Strunk are also precluded from asserting the defense at trial.