WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Michael Rocky Lane, et al.,<br><br>　　　　Defendants. | No. CR-12-01419-PHX-DGC<br><br>**ORDER** |

Defendant Andrew Scott Freeman has filed a motion, on behalf of himself and Defendants Strunk and Lane, to dismiss the indictment because of issues related to the DEA's temporary scheduling of MDVP. Doc. 302. The government responded to the motion in a consolidated response. Doc. 334 at 18-20. For the reasons that follow, the Court will deny the motion.

**I.    Background.**

On March 28, 2013, the government obtained a Second Superseding Indictment ("the Indictment") charging seven co-defendants, including the three remaining Defendants – Michael Rocky Lane, Clinton Joseph Strunk, and Andrew Scott Freeman – with violations of the federal comprehensive Drug Abuse Prevention and Control Act of 1970 ("CSA") and the federal Controlled Substance Analogue Enforcement Act of 1986 ("Analogue Act"). Doc. 143.

The CSA prohibits the manufacture, distribution and possession of controlled substances, which are drugs or other substances listed in Schedules I and II of the Act. *Id.*, at 2, ¶ 1; *see* 21 U.S.C. § 841. The Analogue Act prohibits the manufacture,

distribution, and possession of controlled substance analogues. Doc. 143, at 2, ¶ 3; 21 U.S.C. § 813. These are substances that have a substantially similar chemical structure to a Schedule I or Schedule II controlled substance and that have or are represented or intended to have a substantially similar effect on the central nervous system. *Id.*, *see* 21 U.S.C. § 802(32)(A). To the extent that a controlled substance analogue is intended for human consumption, it is treated as a Schedule I controlled substance for purposes of the CSA. *Id.*, *see* 21 U.S.C. § 813.

The charges in the Indictment stem from allegations that Defendants manufactured and distributed, under false and misleading labels, products such as "Eight Ballz Bath Salts" and "Eight Ballz Premium Glass Cleaner." Doc. 143 at 3-5, *passim*. The Indictment alleges that these products contained various controlled substance analogues, were sold as powder-like substances in gram and half-gram quantities, and, despite their labels, were actually intended for human consumption. *Id.* The Indictment alleges that prior to October 2011, Defendants used 3,4-methylenedioxypyrovalerone (MDPV) in "Eight Ballz Bath Salts" in violation of the Analogue Act, and that upon learning that the Drug Enforcement Administration ("DEA") had issued a final order temporarily scheduling mephedrone, methylone, and MDPV as Schedule I substances under the CSA ("MDPV order"), Defendants began importing and using replacement controlled substance analogues commonly known as a-PVP, a-PBP, pentylone, and pentadone in "Eight Ballz Bath Salts" and other products. *Id.*

II. **Discussion.**

Defendants' motion makes two arguments: (1) Congress's delegation of authority to the Attorney General to temporarily schedule a drug on an emergency basis is unconstitutional, and (2) DEA failed to comply with the CSA in issuing the MDPV order. As part of the second argument, Defendants submit that the DEA did not comply with its obligations under the Regulatory Flexibility Act ("RFA"), 5 U.S.C. §§ 601-611, in issuing the MDPV order.

The CSA delegates to the Attorney General the legislative power to issue

temporary scheduling orders. 21 U.S.C. § 811(h). In turn, the Attorney General has delegated his temporary scheduling power to the DEA, as permitted under 21 U.S.C § 871(a). In *Touby v. United States*, 500 U.S. 160 (1991), the Supreme Court rejected the contention that the temporary scheduling provision, 21 U.S.C. § 811(h), constituted an unconstitutional delegation of legislative power. The Supreme Court held that the provision's "imminent hazard to the public safety" standard was an intelligible principle, and "conclude[d] that [§ 811(h)] passes muster even if greater congressional specificity is required in the criminal context." *Id.* at 165-66. Defendants argue that *Touby* is distinguishable because they, unlike the petitioners in *Touby*, have not conceded that Congress set forth an intelligible principle in § 811(h). Doc. 302 at 3. The Court does not agree. The concession by the petitioners in *Touby* was not dispositive.[1]

To schedule a drug temporarily under this delegation, the DEA must first find that doing so is "necessary to avoid an imminent hazard to the public safety." 21 U.S.C. § 811(h)(1). In making this determination, the DEA must consider three factors: (1) the drug's history and current pattern of abuse; (2) the scope, duration, and significance of abuse; and (3) what if any risk there is to the public health. 21 U.S.C §§ 811(c)(4)-(6), 811(h)(3). Consideration of these three factors includes "actual abuse, diversion from legitimate channels, and clandestine importation, manufacture, or distribution." 21 U.S.C. § 811(h)(3). Additionally, the DEA must publish a 30-day notice of the proposed scheduling in the Federal Register, transmit notice to the Secretary of Health and Human Services ("HHS"), and take into consideration any comments submitted by the Secretary in response. 21 U.S.C. §§ 811(h)(1), 811(h)(4).

Defendants argue that the DEA only looked at three of the eight factors outlined in the CSA to schedule a drug (Doc. 302 at 4), but "only three of the eight factors required

---

[1] The Court is also not persuaded by Defendants argument that the Analogue Act contains an impermissible delegation of legislative power because § 813 does not delegate any authority to the Attorney General while providing that analogue substances shall be treated as controlled substances. The Court agrees with the Fifth Circuit that "there is no basis on which to complain that the analogue statute constitutes an impermissible delegation of legislative power." *United States v. Granberry*, 916 F.2d 1008, 1010 (5th Cir. 1990).

for permanent scheduling" must be considered for temporary scheduling. *See Touby*, 500 U.S. at 163. The MDPV order demonstrates that the DEA considered the relevant factors. *See* 76 Fed. Reg. 65,371 (Oct. 21, 2011). Defendants also submit that the DEA was required to, and did not, "request a scientific and medical evaluation of the substance from the Secretary of Health and Human Services, together with a recommendation as to whether the substance should be controlled." Doc. 302 at 3. Defendants' assertion fails to understand that the temporary scheduling process is not identical to the permanent scheduling process. The MDPV order demonstrates that the DEA transmitted to the Secretary of HHS notice of the proposed order and considered HHS's "no objection" comment in issuing the final order. 76 Fed. Reg. 65,371, 65,372. Defendants have not demonstrated that the DEA failed to comply with the procedures to schedule a drug temporarily.

Defendants also argue that the DEA failed to comply with the RFA. "The RFA requires a federal agency to prepare a regulatory flexibility analysis and an assessment of the economic impact of a proposed rule on small business entities, 5 U.S.C. § 604, unless the agency certifies that the proposed rule will not have a 'significant economic impact on a substantial number of small entities' and provides a factual basis for that certification, *id.* at § 605." *Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 879-79 (9th Cir. 2003). Defendants note that the MDPV order does not reference the RFA, but that other temporary scheduling orders reference the RFA and articulate the manner in which DEA complied with the RFA.

Assuming for purposes of this order that the DEA violated the RFA in issuing the MDPV order and that review of that order is properly before the Court, the Court must determine an appropriate remedy.[2] Section 611(a)(4)(B) provides that "[i]n granting any relief in an action under this section, the court shall order the agency to take corrective action . . . including but not limited to . . . deferring enforcement of the rule against small

---

[2] The motion refers to the Congressional Review Act (Doc. 302 at 8), but does not specify if this act was violated and if so in what manner. The motion also does not provide a statutory citation for the Congressional Review Act.

- 4 -

1  entities *unless the court finds that continued enforcement of the rule is in the public*
2  *interest*."   (Emphasis added.)   For three reasons, the Court finds that continued
3  enforcement of the MDPV order is in the public interest.  First, Congress provided for
4  temporary scheduling for a distinct public interest – "[t]o combat the 'designer drug'
5  problem[.]  *Touby*, 500 U.S. at 163; *id.* at 168 (noting that "Congress' express desire
6  [was] to permit the Government to respond quickly to the appearance in the market of
7  dangerous new drugs."). Second, the MDPV order states that scheduling "is necessary to
8  avoid an imminent hazard to the public safety."  76 Fed. Reg. 65,371.  The DEA
9  elaborates on this finding, noting that "there has been a rapid and significant increase in
10 abuse of these substances in the United States," *id.* at 65,372, that "[t]here are no
11 currently accepted medical uses in treatment in the United States for mephedrone,
12 methylone, or MDPV," *id.*, and that "[t]hese synthetic cathinones have become a serious
13 drug abuse threat as there have been reports of emergency room admissions and deaths
14 associated with the abuse of these substances," *id.* at 65,373.  Third, scheduling of the
15 drugs subject to the MDPV order became permanent on July 9, 2012, with the passage of
16 the Synthetic Drug Abuse Prevention Act of 2012.  Because of the significant public
17 interest in regulating MDPV, recognized by Congress and the DEA, the Court will not
18 delay enforcement of the MDPV order such that it would not be in effect from
19 October 21, 2011, through July 9, 2012, for purposes of this criminal prosecution.
20     **IT IS ORDRED** that Defendants' motion (Doc 302) is **denied.**
21 Excludable delay pursuant to U.S.C. § 18:3161(h)(1)(D) is found to run from 6/9/2013.
22     Dated this 24th day of June, 2013.

*David G. Campbell*
————————————————
David G. Campbell
United States District Judge