**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>             Plaintiff,<br><br>v.<br><br>Michael Rocky Lane, et al.,<br><br>             Defendants. | No. CR-12-01419-PHX-DGC<br><br>**ORDER** |

This order will address matters discussed with the parties on July 12, 2013.

**1.      Proof Required by the Analogue Act.**

On June 26, 2013, the Court entered an order holding that the government must prove that the alleged analogues in this case have a substantially similar chemical structure to Schedule I or II controlled substances, and have (or were represented or intended to have) physiological effects substantially similar to the same Schedule I or II controlled substances. Doc. 385. This ruling was made on the basis of no briefing. It arose from a question asked by the Court during a discussion on the admissibility of certain evidence following jury selection. The Court was required to rule on the issue because opening statements and evidence would be presented the following day, and the Court accordingly ruled on the basis of the one district court decision that was called to its attention by the government during oral argument. The Court found no other authority when it searched on its own that evening.

The government filed a motion to reconsider after three days of trial, asking the Court to hold that the controlled substance to which an alleged analogue is compared for

chemical structure need not be the same as the controlled substance to which it is compared for physiological effect. Doc. 394. When this motion was discussed with the parties, the Court noted that such a holding would preclude the government from relying on the *Turcotte* inference to show Defendant's knowledge of the chemical structure of the alleged analogues. The *Turcotte* inference permits a jury to infer that if Defendant knew that an analogue had a physiological effect substantially similar to or greater than a controlled substance, then the Defendant also knew that the alleged analogue had a chemical structure substantially similar to the controlled substance. *See United States v. Turcotte*, 405 F.3d 515, 527 (7th Cir. 2005). The parties did not disagree with this observation and, after consulting, government counsel stated that they preferred the *Turcotte* inference to the position stated in their motion to reconsider. As a result, the Court did not further consider the motion for reconsideration and trial continued on the basis of the Court's original ruling. The Court provided the parties with proposed jury instructions consistent with this ruling.

Yesterday, after six days of evidence, the government's attorneys informed defense counsel and the Court that the government's experts had advised them that day that the *Turcotte* inference is not scientifically sound. Counsel for the government are to be commended for their candor on this point. When the Court and the parties discussed jury instructions today, counsel for the government accordingly asked that the *Turcotte* inference be removed in light of their experts' positions. They also asked, however, that the Court revisit the motion to reconsider.

The Court has reviewed the government's motion to reconsider, and notes that it includes case law and legislative history that were not provided to or found by the Court before its ruling on June 26, 2013. Doc. 394. Although the Court finds merit in the government's position in the motion to reconsider, the Court concludes that changing the law of the case at this stage of the trial would be quite unfair to Defendant. The parties' opening statements and their direct and cross examination of many witnesses have been based on the Court's ruling the evening before opening statements. The government's

expert witnesses have also followed the Court's holding, opining that the alleged analogues have chemical structures and physiological effects substantially similar to the same controlled substances. Changing a key court ruling mid-stream, after the parties have staked out positions in opening statements and in their presentation of evidence, would be unduly prejudicial. The Court will not reconsider its position at this late stage in the trial.

**2.     Admissibility of CBP Letters.**

The Court has taken under advisement the admissibility of two letters found during the search of Defendant's business. They were written by U.S. Customs and Border Protection ("CBP") to Defendant Michael Lane, at his business address, and were found in a file cabinet maintained by his officer manager. They advised Defendant that two shipments of chemicals to him from China had been seized in San Francisco because they contained a-PVP and a-PBP, which are controlled substances analogues subject to forfeiture under federal law. The government asserts that these letters can be admitted to show Defendant's knowledge and state of mind, and not for the truth of the matter asserted: that a-PVP and a-PBP are controlled substance analogues. The Court agrees.

As the government has noted, an out-of-court statement introduced to prove that the person to whom the statement was made had knowledge of something is not hearsay. *See United States v. Mathies*, 319 Fed. Appx. 554, 557-58 (9th Cir. 2009) (IRS documents and testimony from a previous prosecution admissible to show defendants knew they had a duty to pay taxes); *Stevens v. Moore Business Forms, Inc.*, 18 F.3d 1443, 1449 (9th Cir. 1994) (statements introduced to show witness had knowledge of records); *United States v. Kenney*, 911 F.2d 315, 319 (9th Cir. 1990) (statements to attorney admissible to prove that defendant knew he would not be granted immunity); *United States v. Castro*, 887 F.2d 988, 1000 (9th Cir. 1989) (reports admissible to show defendant had knowledge of certain information); *United States v. Tamura*, 694 F.2d 591, 597-98 (9th Cir. 1982) (same); *United States v. Kutas*, 542 F.2d 527, 528 (9th Cir. 1976) (statement by defendant admissible to prove he knew he was harboring an escaped

1 federal prisoner); *United States v. Moody*, 376 F.2d 525, 530 (9th Cir. 1967) (assertions by declarant admissible to show defendant was aware of unlawful practices of business enterprise).

Similarly, an out-of-court statement introduced to prove that the person to whom the statement was communicated had notice of something is not hearsay. *See Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir. 1990) (press releases admissible to show plaintiffs had notice of potential flooding); *Gibbs v. State Farm Mutual Insurance Company*, 544 F.2d 423, 428 (9th Cir. 1976) (letters admissible to show defendants had received them).

The Court concludes that the CPB letters are admissible to show that Defendant had notice that a-PVP and a-PBP are controlled substance analogues. The jury will be instructed that the letters are not admitted to prove that a-PVP and a-PVP are analogues, or to prove any other matter asserted in the letters, but may be considered when deciding Defendant's knowledge and statement of mind.

Defendant argues that admission of the letters would violate his Sixth Amendment right to confrontation. The Court does not agree. The Court has serious doubts that a document not admitted to prove the truth of the matter asserted could present a confrontation clause problem. But even if it could, no such problem is present in this case because the letters are not testimonial.

A Ninth Circuit decision from last week is highly relevant. The Court of Appeals considered whether Field Form 826, prepared by border patrol agents upon the arrest of suspected illegal aliens, is testimonial for purposes of the Confrontation Clause. *United States v. Morales*, --- F.3d ----, 2013 WL 3306395 (9th Cir. July 2, 2013). Form 826 contains a "Notice of Rights" section that advises the alien of the reason for his arrest and corresponding rights, such as the right to a hearing, the right to obtain low-cost legal representation, and the right to communicate with legal representatives or consular officials. It also contains a "Request for Disposition," and asks the alien to initial next to one of three options: to request a hearing before the Immigration Court, to claim asylum,

or to admit illegality. The Ninth Circuit noted that a statement raises Sixth Amendment concerns only if it is testimonial, which requires a showing that it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (quoting *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004)).

The Ninth Circuit found that the Form 826 was not testimonial. It noted that, as *Melendez-Diaz* explained, business and public records "are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because – having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial – they are not testimonial." *Id*. at 324. The court further explained that a business or public record is not testimonial due to "the mere possibility" that it could be used in a later criminal prosecution. *United States v. Orozco-Acosta*, 607 F.3d 1156, 1164 (9th Cir. 2010). Rather, such records are testimonial only if there is some showing that the primary purpose of the record is for use in litigation. *See id*. at 1163-64. This "primary purpose" analysis is objective, and focuses on the primary purpose "reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Michigan v. Bryant*, --- U.S. ---, 131 S.Ct. 1143, 1156 (2011); *see also Orozco-Acosta*, 607 F.3d at 1163-64 (noting that a warrant of deportation is nontestimonial because "neither [its] sole purpose nor even its primary purpose is use at trial," but rather "to maintain records concerning the movement of aliens and to ensure compliance with orders of deportation." (quoting *United States v. Torres-Villalobos*, 487 F.3d 607, 613 (8th Cir.2007))).

The Ninth Circuit then concluded:

> Like the warrants of removal considered in *Orozco-Acosta*, the Field 826s are nontestimonial because they were "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." As is evident from the form itself, as well as Agent Wycoff's testimony about its use, a Border Patrol agent uses the form in the field to

> document basic information, to notify the aliens of their administrative rights, and to give the aliens a chance to request their preferred disposition. The Field 826s are completed whether or not the government decides to prosecute the aliens or anyone else criminally. The nature and use of the Field 826 makes clear that its primary purpose is administrative, not for use as evidence at a future criminal trial. Even though statements within the form "may become 'relevant to later criminal prosecution,' " this potential future use "does not automatically place [the statements] within the ambit of 'testimonial.'"

*Morales*, --- F.3d ----, 2013 WL 3306395 (citations omitted).

This holding applies squarely to the CBP letters. Like the Form 826s, they were created as part of the routine business of a government agency. Like the Form 826s that are created when aliens are arrested, the CBP letters were created when Defendant Lane's property was seized. Like the Form 826s, they informed Mr. Lane of his rights, including his right to contest the seizures of the a-PVP and a-PBP in court. Their primary purpose was administrative, and the fact that they might later become relevant to a criminal prosecution does not make them testimonial.

Finally, Defendant Lane argues that there is no evidence he ever saw the CBP letters. The Court does not agree. The letters were addressed to him, at the business address where he was the owner and sole proprietor, and were found in the file cabinet of his office manager. In addition, at least one employee of the business has testified during trial that the seizure of chemicals in San Francisco was discussed in the office, as was a letter advising the company of this fact. From this evidence, a reasonable jury could conclude that Mr. Lane was aware of the contents of the letter. Defense counsel is free to argue to the contrary in closing statements. This factual issue goes to the weight, not the admissibility, of the letters.

**3.   Defense Exhibit 54.**

The Court concludes that Defense Exhibit 54 is not relevant. It contains statements from a laboratory concerning countries and states in which various alleged analogues are or are not prohibited. As the Court has already concluded, the government need not prove that Mr. Lane knew his actions were illegal. *See* Doc. 364 at 5. The

- 6 -

Court previously ruled that "Defendants will not be permitted to present evidence or argument to the jury that they believed their conduct was legal. Such evidence and argument are irrelevant." *Id.*

**IT IS ORDERED** that the government's motion for reconsideration (Doc. 394) is **denied**, that the CBP letters are admissible, and that Defense Exhibit 54 is not admissible.

Dated this 13th day of July 2013.

David G. Campbell
United States District Judge