1 **feder law office, p.a.**
2930 e. camelback road, suite 160
2 phoenix, arizona 85016
(602) 257-0135
3 bf@federlawpa.com

4 Bruce Feder - State Bar No. 004832

5 attorney for Defendant Lane

6 UNITED STATES DISTRICT COURT

7 DISTRICT OF ARIZONA

8 United States of America,          )   NO. CR12-01419-001-PHX-DGC
                                     )
9          Plaintiff,                )   **MOTION FOR NEW TRIAL,**
                                     )   **AND MOTION FOR ADDITIONAL**
10 vs.                               )   **EXTENSION TO FILE SUPPLEMENT**
                                     )
11 Michael Rocky Lane,               )
                                     )
12         Defendant.                )
                                     )

13

14   The Defendant, Michael Lane, by and through his attorneys undersigned, and pursuant to

15 Rule 33 of the Federal Rules of Criminal Procedure, moves this Court for its order granting a new

16 trial, and for an extension of time to supplement said Motion, for the reasons that:

17   1.  One of the government's primary witnesses, Cassandra Prioleau, appears to have

18       given intentionally erroneous testimony, which testimony was an important part of

19       the government's case, and, if misrepresentative, prejudicial to the defendant;

20   2.  The Controlled Substance Analogue Act (CSAA) is unconstitutionally vague because

21       it does not give a reasonably attentive layperson notice of what is prohibited conduct,

22       and it does not give juries guidance to avoid arbitrary enforcement;

23   3.  It was error to allow the 'user 'testimony and comparisons of the alleged analogues

24       to cocaine and methamphetamine.

25   This Motion is based on the attached Memorandum of Points and Authorities, the file in this

26 matter, and such other arguments and evidence as may be presented.

27 ...

28                                              1

RESPECTFULLY SUBMITTED this 16th day of September, 2013.

                                              FEDER LAW OFFICE, P.A.

                                              <u>s/Bruce Feder</u>
                                              Bruce Feder
                                              Attorney for Defendant Lane

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.    <u>SUMMARY</u>

On July 19, 2013, the Defendant, Michael Lane ("Lane"), was found guilty of two counts of conspiracy to manufacture or distribute a controlled substance analogue and one count of possession, or aiding and abetting in the possession with intent to distribute a controlled substance analogue.

A number of actions occurred which warrant a new trial, as specifically set forth below.

II.    <u>ARGUMENT</u>

       1.    One Of The Government's Primary Witnesses, Cassandra Prioleau, Appears to Have Given Intentionally Erroneous Testimony, Which Testimony Was An Important Part Of The Government's Case, And, If Misrepresentative, Prejudicial To The Defendant.

In the months before trial, the government disclosed for the first time numerous 'NIDA' reports which purported to discuss animal studies that had occurred involving most of the alleged analogue chemicals charged in the relevant indictment. During cross-examination of Dr. Prioleau, she asserted on several occasions that DEA, her employer, never directed NIDA or its contracting facilities to perform the subject animal studies, but that the DEA in its regular contacts with NIDA may have recommended the relevant analogues as chemicals of concern to them. July 10, 2013 trial transcript, pages 84 – 88. For instance, the following question – answer colloquy occurred:

    Q.    "… Nothing else but the NIDA studies that DEA contracted, right?

    A.    We didn't contract those studies.  NIDA does them free of their own will.

    Q.    So it's just coincidence that they did them on these exact analogues?

2

A.      No. They asked us if we are interested in having substances tested, but they do them voluntary. They don't have to do them. We have no say in what they do or how they do it. They just do the studies and they provide them to us.

If they don't have time to do the studies, then they can't do them for us, so we only get the studies based on their – – if they have time to fit in drugs, other drugs that we recommend that they test. But that is up to them what and when they can test them." (Exhibit 1.)

Notwithstanding this testimony, in an article entitled "Locomotor Stimulant and Discriminative Stimulus Effects of 'Bath Salt' Cathinones" by Gatch, Taylor, and Forster, of the University of North Texas Health Science Center (Exhibit 2), it appears the DEA initiated the tests disclaimed by Dr. Prioleau "... In 2011, the Drug Enforcement Agency (DEA) identified a group of cathinones of 'great concern' for which they requested information, and temporary scheduling was obtained for three compounds identified as being of most concern… "..............."In the present study, a group of synthetic cathinones (....) flagged for study by the DEA all produced locomotor stimulant effects similar to those of methamphetamine and discriminative stimulus effects similar to those of both cocaine and methamphetamine."

The defense has only recently been provided with this article, and initiated investigation into whether other testing on the relevant alleged analogues that was not disclosed has occurred which would be relevant to the government's case, and is the reason for requesting additional time to informally or formally obtain such information. See Declaration of Janet Swanson (Exhibit 3).

2.      The Controlled Substance Analogue Act (CSAA) Is Unconstitutionally Vague Because It Does Not Give A Reasonably Attentive Layperson Notice Of What Is Prohibited Conduct, And It Does Not Give Juries Guidance To Avoid Arbitrary Enforcement.

The review of void for vagueness challenges is de novo, since it presents a legal question. The constitutionality of the Controlled Substance Analogue Act ("CSAA") has been previously briefed and argued on Due Process and First Amendment grounds. As supplementation to these arguments, this Court should note the opinion in *McBoyle v. United States*, 283 U.S. 25, 27 (1931), where Justice Holmes wrote for the Court:

3

> "Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear. When a rule of conduct is laid down in words that evoke in the common mind only the picture of vehicles moving on land, the statute should not be extended to aircraft simply because it may seem to us that a similar policy applies, or upon the speculation that if the legislature had thought of it, very likely broader words would have been used."

The Controlled Substance Act is a "rule-based" scheme – the statute lists the specific chemicals that are banned. The CSAA, on the other hand, is a "standards-based" scheme. The statute offers vague definitions, not lists. The difference between the two is discussed at length in Kau, "Flashback to the Federal Analogue Act of 1986: Mixing Rules and Standards in the Cauldron," 156 U.Penn.L.Rev. 1077, 1089-90 (2008):

> The main distinction between rules and standards is that rules give *ex ante* "content" to the law, while standards give *ex post* "content" to the law. In the context of controlled substance analogue legislation, rules explicitly define which chemicals are prohibited *ex ante*. For example, if the legislature in a rules district wanted to prohibit methamphetamine, MDMA, and MDBU, it might issue this law: "Methamphetamine, 3,4–methylenedioxyamphetamine (MDMA) and 3,4-methylenedioxy-N-butylamphetamine (MDBU) are prohibited." Conversely, a standards-based jurisdiction might issue a law like the Federal Analogue Act:"All drugs that are substantially similar to amphetamine in structure are prohibited." The difference between the results of rules and standards is striking. Rules would signal that MDMA, MDBU, and methamphetamine were explicitly prohibited. Standards, on the other hand, would require an individual to determine whether MDMA, MDBU, or methamphetamine was "substantially similar" to amphetamine.
>
> *********
>
> However, an individual would never know whether he or she was right until the particular matter was litigated in criminal court.

The statutory definition of a controlled substance analogue has been described as "an unholy union of legalese and chemistry jargon [that] is probably enough to bewilder even the most studious individuals." Kau, *supra*, at 1100.

4

3. It Was Error To Allow The 'User' Testimony And Comparisons Of The Alleged Analogues To Cocaine And Methamphetamine.

In supplementation to the pleadings and arguments already presented in regard to this issue, the Court should grant a new trial because it allowed testimony that the alleged analogues were substantially similar to different Schedule I and II chemicals, and not the scheduled drug alleged in the indictment and/or discovery. Specifically, allowing the government to present testimony that the alleged analogues were chemically substantially similar to the asserted scheduled drug, but avoid proof of the pharmacologic substantial similarity to the same asserted scheduled drug by substituting cocaine and methamphetamine, appears to clearly contravene the statutory elements, legislative intent, and, eventually, application of the federal sentencing guidelines. To hold that the statute is satisfied by proof of each prong with regard to a different controlled substance leads to the absurd results discussed in *United States v. Klecker*, 228 F.Supp.2d 720, 727 (E.D. Va. 2002), *aff'd,* 348 F.3d 69 (4th Cir. 2003), and a concern of how the sentencing guidelines can be applied. The federal sentencing guidelines call for a trial court sentencing a defendant to decide which one controlled substance the analogue is analogous to. See USSG §2D1.1 Commentary paragraph 6. The scheme depends on the chemical in question being an analogue to one, and only one, drug. Here, for example, the government's evidence asserted that MDPV was chemically substantially similar to methcathinone, but pharmacologically similar to cocaine and/or methamphetamine. The other alleged analogues were comparably split between the two or three discussed scheduled drugs. The sentencing guidelines referred to "the controlled substance for which it is an analogue," not "one of the controlled substances for which it is an analogue" or was alleged to have pharmacologic substantial similarities. To avoid absurd results at sentencing, the proof of each of the prongs must focus on the same analog relationship to the same scheduled drug.

A court must construe the plain meaning of a statute, subject to two exceptions: 1) "when literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd , i.e., that is so gross as to shock the general moral or common sense ..." or 2) "when literal application of the statutory language at issue produces an outcome that is

5

demonstrably at odds with clearly expressed congressional intent." *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000). See, *United States v. Forbes*, 806 F.Supp 232, 236 (D. Colo 1992):

> "... Additionally, the government and defense experts who testified agree that the question of structural similarity must, in part, be evaluated in conjunction with the molecule's hallucinogenic and stimulant activity. Because structurally similar substances have similar pharmacological effects on the central nervous system, a finding of such similar effects is some indication that the molecular structures should be classified as substantially similar. The scientific interdependence of molecular structure and the effect on the central nervous system is consonant with the legislative history evidencing congressional intent to establish a dependent, two-prong test."

Allowing comparisons to cocaine and methamphetamine was error, and a new trial is warranted.

III.    LAW

   1.   The Presentation Of Misleading Evidence And Argument.

Should the Court find that the government, and its witnesses, knew of the misleading nature of the testimony it prepared and elicited, the Court has various sanctions available to it including, but not limited to, dismissal. United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992); United States v. Samango, 607 F.2d 877 (9th Cir. 1979); United States v. Basurto, 497 F.2d 781 (9th Cir. 1974). At the least, a new trial is warranted.

   2.   The Cumulative Errors Warrant A New Trial.

If the Court finds that no single trial error was sufficiently prejudicial to warrant a new trial, the cumulative effect of the several errors indicated above requires reversal. United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996) (prejudice resulting from cumulative effect of improper vouching by the government, an improper comment by the prosecutor about a defense counsel, the improper admission of evidence previously ruled inadmissable required reversal even though each error evaluated alone might not have warranted reversal); *see also*, United States v. Young, 470 U.S. 1 (1985).

IV.    CONCLUSION

A new trial should be granted.

6

DATED this 16th day of September, 2013.

                                          FEDER LAW OFFICE, P.A.

                                        _s/Bruce Feder_
                                        Bruce Feder
                                        Attorney for Defendant

7

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of September, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

Donald James Pashayan
Theresa Rassas


 s/Laurel Barord