WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>              Plaintiff,<br><br>v.<br><br>Michael Rocky Lane,<br><br>              Defendant. | No. CR-12-01419-01-PHX-DGC<br><br>No. CV-16-04231-PHX-DGC (DMF)<br>No. CV-19-05028-PHX-DGC (DMF)<br><br>(Related Cases)<br><br>**ORDER** |

Defendant Michael Lane is in the custody of the Federal Bureau of Prisons ("BOP"). Pursuant to 18 U.S.C. § 3582, he has filed a motion for compassionate release due to ongoing health concerns from the COVID-19 pandemic. Doc. 785. The motion is fully briefed. Docs. 790-92. For reasons stated below, the Court will deny the motion.

**I.  Background.**

In March 2013, a grand jury charged Defendant with two counts of conspiracy to manufacture and distribute a controlled substance analogue (counts one and three) and one count of possession with intent to distribute a controlled substance analogue (count five). Doc. 144; *see* 21 U.S.C. §§ 841 and 846, 841(a)(1). Defendant declined the government's plea offers and went to trial in June 2013. *See* Doc. 377. The jury found Defendant guilty on all three counts. Doc. 465.

In December 2013, the Court sentenced Defendant to 180 months in prison followed by 60 months of supervised release. Docs. 564, 566. On appeal, the Ninth Circuit affirmed

the convictions and sentence. Docs. 567, 727; *see United States v. Lane*, 616 F. App'x 328, 329 (9th Cir. 2015), *cert. denied*, 577 U.S. 1113 (2016).[1]

Defendant is confined at the federal correctional institution in Safford, Arizona ("FCI-Safford"). *See* Federal BOP, *Find an inmate*, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited Feb. 16, 2021). His projected release date is May 6, 2025. *See id.*; Doc. 785 at 2.

Defendant asked the warden at FCI-Safford for compassionate release on September 26, 2020. Doc. 785-1 at 2. The request was denied on October 23. *Id.* at 4. Defendant filed his motion for compassionate release on December 1 and filed a supplement to the motion on December 23. Docs. 785, 790. The government filed a response on January 15, 2021, and Defendant replied one week later. Docs. 791, 792.

On February 8, the government moved for leave to supplement the record with a BOP medical record showing that Defendant had tested positive for COVID-19 and recovered from the infection in January 2021. Doc. 793. Defendant stipulates that he contracted and recovered from COVID-19 in early January 2021. Doc. 794 at 1, 5. The Court will grant the government's motion and treat the BOP medical record dated January 8, 2021 (Doc. 793-1) as part of the record in this matter.[2]

**II.   Compassionate Release Under § 3582(c) and the First Step Act.**

Compassionate release is governed by § 3582(c). *See United States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *4 (C.D. Cal. May 21, 2020) (citing *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019)). Section 3582(c) previously provided for compassionate release only upon motion of the BOP Director. *See id.*; *United*

---

[1] Defendant's motion to vacate his sentence under 28 U.S.C. § 2255 was denied in April 2018. Doc. 32, Case No. CV-16-04231. In January 2020, Defendant filed a second § 2255 motion. Doc. 21, Case No. CV-19-05028. Judge Fine has issued a report recommending that the motion be denied ("R&R"). Doc. 48. The Court will address the R&R and Defendant's objections (Doc. 49) in a separate order.

[2] Defendant objects to the government's assertion that COVID-19 reinfections "remain rare." Doc. 794 at 1 (citing Doc. 793 at 2). Because the Court, as explained more fully below, finds that Defendant has shown extraordinary and compelling reasons justifying compassionate release, it need not consider whether COVID-19 reinfections are rare. The Court will deny the motion to supplement in this regard.

2

*States v. McCollough*, No. CR-15-00336-001-PHX-DLR, 2020 WL 2812841, at *1 (D. Ariz. May 29, 2020). On December 21, 2018, Congress enacted – and the President signed into law – the First Step Act of 2018 ("FSA"), "with the intent of 'increasing the use and transparency of compassionate release.'" *Willis*, 382 F. Supp. 3d at 1187 (quoting Pub. L. No. 115-391, 132 Stat. 5194, at 5239 (2018)).

The FSA amended § 3582(c) to permit motions for compassionate release by defendants. A defendant may bring such a motion after (1) requesting the BOP to make such a motion on his behalf, and (2) exhausting all administrative appeals after the BOP has denied the request, or 30 days have elapsed after the warden received the request, whichever is earlier. *See* § 3582(c)(1)(A); *United States v. Baye*, No. 3:12-CR-00115-RCJ, 2020 WL 2857500, at *8 (D. Nev. June 2, 2020) (comparing § 3582(c)(1)(A) (2018) with § 3582(c)(1)(A) (2002)).

Specifically, the amended version of § 3582(c) provides:

> The court may not modify a term of imprisonment once it has been imposed except that –
>
> (1) in any case –
>
> (A) the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).[3]

---

[3] "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." *United States v. Marks*, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).

### III. Defendant's Motion.

Defendant filed the present motion more than four months after he submitted his administrative request for compassionate release to the warden at FCI-Safford. The Court therefore has jurisdiction under § 3582(c)(1)(A). *See* Docs. 785 at 2-3, 791 at 8.

Defendant seeks compassionate release due to the COVID-19 infections at FCI-Safford and his chronic kidney disease, asthma, Hepatitis C, arthropathy (chronic osteoarthritis), sinus bradycardia (slow heartbeat), and weight. Doc. 785 at 3-5. The government argues that Defendant's motion should be denied because he is a danger to the community and the sentencing factors set forth in 18 U.S.C. § 3553(a) do not weigh in favor of early release. Doc. 791 at 2, 11-17. The Court finds that Defendant has shown extraordinary and compelling reasons for compassionate release, but a sentence reduction would not serve the purposes of § 3553(a) and Defendant has failed to show that he no longer is a danger to the community.

### A.   Extraordinary and Compelling Reasons.

While § 3582(c) does not define "extraordinary and compelling reasons," the Sentencing Commission has identified four categories that may qualify: serious medical conditions, advanced age, family circumstances, and a catch-all "other reasons." U.S.S.G. § 1B1.13, application note 1(A)-(D); *see United States v. Esparza*, No. 17-cr-1101-JAH, 2020 WL 2838732, at *2 (S.D. Cal. June 1, 2020).[4]

The following medical conditions can constitute extraordinary and compelling reasons justifying compassionate release:

---

[4] There is no policy statement specifically applicable to motions for compassionate release filed by prisoners under the FSA. By its terms, the current policy statement applies to motions for compassionate release filed by the BOP Director. U.S.S.G. § 1B1.13. The Sentencing Commission has not amended the current policy statement since the FSA was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (citing *United States v. Gross*, No. 2:04-CR-32-RMP, 2019 WL 2437463, at *2 (E.D. Wash. June 11, 2019)). While the current policy statement may not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i), it does provide helpful guidance. *See id.*; *United States v. Park Hung Quan*, No. CR19-0148-JCC, 2021 WL 615402, at *2 (W.D. Wash. Feb. 17, 2021).

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)[.]
>
> (ii) The defendant is—
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

§ 1B1.13, application note 1(A).

BOP medical records show that Defendant suffers from stage-3 chronic kidney disease, asthma and unspecified breathing abnormalities, marked sinus bradycardia, arthropathy, and Hepatitis C. Doc. 785-1 at 6-7, 11; *see id.* at 9 (Defendant's declaration). The Centers for Disease Control and Prevention ("CDC") has identified chronic kidney disease as a medical condition that poses a serious risk for severe illness from COVID-19. *See* CDC, COVID-19, *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 17, 2021). The CDC also has identified asthma and being overweight as potential risk factors from COVID-19 infections. *See id.*[5]

The Court finds, and the government agrees (Docs. 791 at 10, 793 at 2), that Defendant suffers from medical conditions that could present serious risks from COVID-19. *See United States v. Lambert*, No. 2:15-CR-00454-TC, 2021 WL 391427, at *4 (D. Utah Feb. 4, 2021) ("A person of any age has an increased risk of severe illness if he has one or more of following CDC-identified chronic conditions: . . . chronic kidney

---

[5] The CDC defines "overweight" as a body mass index ("BMI") between 25 and 30. *See id.* BMI is a person's weight in kilograms divided by the square of height in meters. *See* CDC, Healthy Weight, Nutrition, and Physical Activity, *Body Mass Index (BMI)*, https://www.cdc.gov/healthyweight/assessing/bmi/index.html (last visited Feb. 17, 2021). Defendant does not provide his specific BMI, but states that Dr. Thomas Longfellow, a BOP physician, determined that Defendant was overweight for his height on November 6, 2020. Doc. 785-1 at 9. Defendant's presentence report (at 3) lists his height and weight at 5'7'' and 170 pounds.

5

disease[.]"); *United States v. Nassar*, No. 2:17-CR-00104-KJM-1, 2020 WL 6484181, at *2 & nn.3-7 (E.D. Cal. Nov. 4, 2020) ("District courts within the Ninth Circuit have recognized that asthma . . . increase[s] the risk of serious COVID-19 symptoms and complications.") (citing cases).

Defendant is not likely to recover from his medical conditions while incarcerated. And as of February 17, 2021, more than 600 inmates and staff members at FCI-Safford have tested positive for COVID-19. *See* Federal BOP, *COVID-19 Cases, Safford FCI*, https://www.bop.gov /coronavirus/ (595 inmates and 38 staff members).

"Courts have found general concerns about possible exposure to COVID-19 'do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement.'" *United States v. Atari*, No. 2:17-CR-00232-JAM, 2020 WL 2615030, at *2 (E.D. Cal. May 22, 2020) (citations omitted); *see United States v. Partida*, No. CR-17-08260-001-PCT-DGC, 2020 WL 3050705, at *6 (D. Ariz. June 8, 2020) (same). But given Defendant's medical conditions and the COVID-19 infections that have occurred at FCI-Safford, Defendant's fear of falling seriously ill from another COVID-19 infection is real and not merely a general concern. The Court finds extraordinary and compelling reasons for a sentence reduction. *See United States v. Crenshaw*, No. 16-CR-0004 (PJS/SER), 2020 WL 6821872, at *1 (D. Minn. Nov. 20, 2020) ("The government concedes – and the Court agrees – that Crenshaw's chronic kidney disease is an 'extraordinary and compelling reason' for a sentence reduction."); *United States v. Walker*, No. 11-cr-381 (SRN/HB), 2020 WL 4194677, at *4-5 (D. Minn. June 26, 2020) (collecting cases on the dangerousness of COVID-19 for defendants with chronic kidney disease); *United States v. Rodriguez*, 476 F. Supp. 3d 1071, 1074-76 (S.D. Cal. 2020) (finding extraordinary and compelling reasons where the defendant had asthma and was overweight).[6]

---

[6] Defendant asserts that his pending § 2255 motion is an extraordinary and compelling reason justifying compassionate release. Doc. 785 at 9-11. But "[n]othing in the First Step Act suggests that Congress authorized courts to grant relief under the compassionate release provision of Section 3582(c)(1)(A) based on a legal challenge to [a] defendant's conviction or sentence." *United States v. Moreira*, No. 06-20021-01-KHV,

6

**B.    Section 3553(a) Factors.**

Defendant's COVID-19 risk factors do not, however, end the Court's inquiry. Section 3582(c)(1)(A)(ii) "provides that, before reducing a defendant's sentence for 'extraordinary and compelling reasons,' the court must consider the factors set forth in 18 U.S.C. § 3553(a)[.]'" *United States v. Mobley*, No. CR CCB-17-144, 2020 WL 6891398, at *3 (D. Md. Nov. 24, 2020); *see United States v. Soza-Soto*, No. 19-CR-684-GPC, 2020 WL 7260663, at *3 (S.D. Cal. Dec. 10, 2020) ("Before determining if release is warranted, the Court must also take into account public safety and the Section 3353(a) sentencing factors.") (citing § 3582(c)(1)(A)(ii) and U.S.S.G. § 1B1.13(2)). The § 3553(a) "factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013). The Court "should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release[.]" *United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020).

Defendant engaged in the serious criminal conduct of conspiring to manufacture and distribute a controlled substance analogue in violation of 21 U.S.C. §§ 841 and 846. Doc. 465. Between October 2011 and July 2012, he owned and operated a company that manufactured and distributed a large quantity of controlled substances analogues.

---

2020 WL 6939762, at *6 (D. Kan. Sept. 3, 2020) (citations omitted); *see United States v. Mitchell*, No. 03-40021, 2021 WL 462123, at *5 (C.D. Ill. Feb. 9, 2021) ("The court recognize[s] that while the defendant was nominally requesting relief under § 3582(c)(1)(A)(i), he was really attacking the length of his sentence, which should be raised in a § 2255 proceeding. Therefore, this Court . . . finds that the length of Defendant's sentence does not constitute extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A)."); *United States v. Woods*, No. 1:17-CR-118-LG-JCG-2, 2020 WL 4318758, at *1 (S.D. Miss. July 27, 2020) ("Woods' arguments attack her underlying conviction or sentence and are not cognizable on a § 3582 motion. A compassionate release request is not a matter of illegal or unconstitutional restraint. Rather, § 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity.") (internal citations and quotation marks omitted).

Doc. 791 at 11 (citing PSR ¶¶ 7-9, 15). Before opening his own business, Defendant served as a salesperson at a company that manufactured and distributed large quantities of controlled substance analogues. *Id.* Defendant knew the substances he was selling were analogues of Schedule I or II controlled substances, he sold them for human consumption to create a methamphetamine- or cocaine-like high, he knew the drugs were dangerous given his own consumption of them and subsequent substance abuse problems, and he sold "an enormous volume of drugs" to maximize his profit. Doc. 585 at 40-43.

Defendant's sentencing guidelines range was up to life imprisonment, but the statutory maximum sentence for counts one, three, and five was 240 months. *Id.* at 40-45; *see* Docs. 731 at 1, 791 at 14; PSR ¶¶ 84-85. Defendant was sentenced below the range and maximum sentence to a term of 180 months. Doc. 566. To date, Defendant has served about half of his 180-month sentence. *See id.*; Docs. 785 at 13, 791 at 15.

Defendant's good behavior, substance abuse treatment, and rehabilitative efforts while in prison are commendable, and he clearly has the love and support of his parents. Docs. 785 at 11-12, 785-1 at 50, 792 at 6.[7] But releasing Defendant from prison at this time would not reflect the seriousness of his offenses, promote respect for the law, provide just punishment for his serious offenses, or afford adequate deterrence to criminal conduct. The Court finds that the § 3553(a) factors outweigh the extraordinary and compelling reasons allowing for compassionate release. *See* Doc. 791 at 14-15; *Ebbers*, 432 F. Supp. 3d at 430 (the court must "particularly [consider] whether compassionate release would undermine the goals of the original sentence"); *United States v. Tuitele*, No. CR 13-00593 JMS, 2020 WL 5167527, at *4 (D. Haw. Aug. 31, 2020) (reducing the defendant's sentence "would severely undermine the goals of sentencing set forth in § 3553(a)"); *United States v. Coleman*, No. 2:16-CR-00139, 2020 WL 6334784, at *8 (W.D. Pa. Oct. 29, 2020) (denying compassionate release where the defendant had serious health conditions because two years remained on his eight-year sentence for drug offenses).

---

[7] In a memorandum dated January 5, 2021, the Probation Office recommended that Defendant's proposed release plan be considered suitable for supervision.

### C. Danger to the Community.

Defendant also has failed to show that he no longer is "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2); *see Park Hung Quan*, 2021 WL 615402, at *2 ("Even if the policy statement is not binding, the Court may consider it in the exercise of its discretion. The policy statement recommends that courts not reduce sentences of individuals who would present a danger to the community upon release, USSG § 1B1.13(2), and the Court finds that to be an appropriate consideration.") (internal citation omitted); *United States v. Arceneaux*, 830 F. App'x 859 (9th Cir. 2020) ("[T]he district court did not abuse its discretion by denying Arceneaux's motion. The court considered the nature and circumstances of the armed robberies for which Arceneaux was convicted and his lengthy criminal history, and reasonably concluded that a reduced sentence was not appropriate in light of the danger Arceneaux posed to the community.") (citing § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(2)).

Defendant sold a large amount of dangerous drugs to maximize his profit. Doc. 585 at 40-43. He falsely labeled the substances "not for human consumption" and intended to skirt federal drug laws. *Id.* at 41; Doc. 791 at 12 (citing PSR ¶ 9). His crimes were not victimless. As the Court recognized at sentencing, Congress passed the Analogue Act "because these kinds of drugs ruin people's lives." Doc. 585 at 41.

Defendant also has a history of criminal conduct that spans many years and includes multiple felony convictions. His felony convictions include burglary, forgery, theft, fraud, drug-trafficking, and armed bank robbery in addition to multiple revocations of probation. Doc. 791 at 12 (citing PSR ¶¶ 41-47). He was arrested several other times, including for drug trafficking, fraud, and multiple instances of shoplifting, trespassing, and theft. *Id.* at 12-13 (citing PSR ¶¶ 50-62).

The Court recognizes that the BOP's PATTERN score for Defendant places him at a low risk for recidivism. *See* Docs. 785-1 at 46-48. But the Court cannot conclude on the present record that Defendant no longer poses a danger to the community. *See United States v. Rosander*, No. 3:17-CR-00051-HZ-3, 2020 WL 5993065, at *4 (D. Or. Oct. 2,

9

2020) ("The Court commends Defendant for her conduct . . . during her incarceration thus far, but that alone is insufficient to establish that she no longer remains a danger to others or to the community."); *see also United States v. Abalos*, No. CR 16-00745 JMS (01), 2020 WL 5167537, at *4 (D. Haw. Aug. 31, 2020) ("Considering all of the § 3553(a) factors, including the offense conduct . . . and the time remaining on Defendant's sentence, reducing Defendant's sentence to time served would undermine the goals of sentencing set forth in § 3553(a)(2). And Defendant's PATTERN score and post-offense conduct while in prison, while admirable, does not alter the court's conclusion.").

**IV.   Conclusion.**

Defendant has shown extraordinary and compelling reasons for compassionate release, but release at this time would undermine the goals of sentencing set forth in § 3553(a). Defendant also has failed to show that he no longer is a danger to the community. His motion for compassionate release will be denied.[8]

**IT IS ORDERED:**

1.   Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582 (Doc. 785) is **denied**.

2.   The government's motion for leave to supplement the record (Doc. 793) is **granted in part and denied in part** as set forth above. The BOP medical record dated January 8, 2021 (Doc. 793-1) is part of the record in this case.

Dated this 19th day of February, 2021.

David G. Campbell
Senior United States District Judge

---

[8] Defendant's alternative request that the Court order him to serve the remainder of his sentence on home confinement (Doc. 785 at 1, 13) is denied because the "[BOP] has the statutory authority to choose the locations where prisoners serve their sentence." *United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020); *see also United States v. Becerra*, No. 1:18-CR-00080-DAD-BAM, 2021 WL 535432, at *9 (E.D. Cal. Feb. 12, 2021) ("[T]he CARES Act authorizes the BOP – not courts – to expand the use of home confinement under 18 U.S.C. § 3624(c)(2).") (citations and quotation marks omitted).